# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 29 2019, 9:22 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Steven Knecht
VONDERHEIDE & KNECHT, P.C.
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Natalie F. Weiss
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Involuntary Termination of the Parent-Child Relationship of A.J. and A.H. (Minor Children), | March 29, 2019 |
| and | Court of Appeals Case No. 18A-JT-2592 |
| S.H. (Mother), | Appeal from the Tippecanoe Superior Court |
| *Appellant-Respondent,* | The Honorable Bradley K. Mohler, Special Judge |
| v. | Trial Court Cause Nos. 79D03-1802-JT-34 79D03-1802-JT-35 |
| The Indiana Department of Child Services, | |
| *Appellee-Petitioner.* | |

**Bailey, Judge.**

# Case Summary

S.H. ("Mother") appeals the trial court judgment terminating her parental rights to A.J. and A.H. ("Children"). She raises one issue on appeal: whether the trial court clearly erred when it held that termination of her parental rights was in Children's best interests.

We affirm.

# Facts and Procedural History

Mother and C.J. are the parents of A.J., who was born on March 10, 2010. Mother and J.H. are the parents of A.H., who was born on February 11, 2015.[1] On May 12, 2016, the Indiana Department of Child Services ("DCS") received a report that Mother and J.H. were allowing Children to be exposed to substance abuse. On June 7, 2016, DCS filed a Petition alleging Children were Children in Need of Services ("CHINS") because (1) Children previously had been the subject of a CHINS action due to exposure to substance use, which was closed in March of 2016; (2) A.J. tested positive for methamphetamine on June 1, 2016; and (3) Mother refused to submit to a drug screen or initially produce Children for drug screening. Appealed Order at 5.[2] Children were

---

[1] Neither Father, whose parental rights were also terminated, actively participates in this appeal.

[2] The Appealed Order consists of two termination orders, one regarding A.J. and the other regarding A.H. However, the orders are identical in all relevant respects. Therefore, for ease of reference, we cite only to the termination order regarding A.J.

removed from the home and adjudicated CHINS on November 2, 2016, based on the allegations in the CHINS petition and the fact that Mother temporarily had removed Children and traveled to Florida without DCS permission. In its November 16, 2016, dispositional decree and accompanying Parental Participation Order the trial court ordered Mother to do the following, among other things:

> Attend all hearings, visitations, and appointments; contact DCS at least twice per month; obtain and maintain safe housing for Children; not allow anyone to reside in her home without permission of DCS; allow DCS home visits; refrain from possessing or using controlled substances and alcohol; submit to random drug screens; obtain a stable source of income; follow all recommendations resulting from service provider assessments or evaluations; participate in case management and therapy and follow all recommendations; and provide DCS with documentation regarding compliance with court orders.

Ex. Vol. I at 148-50.

[4] DCS filed petitions to terminate Mother's parental rights to Children on February 26, 2018. A termination hearing was held on July 20 and July 27, and on September 10, 2018, the trial court issued its order terminating Mother's parental rights to Children. That order stated, in relevant part:

* * *

Findings of Fact

* * *

3.  That once [Children were] removed, the Parents failed to comply with the terms of the Disposition Order and failed to make significant and lasting progress toward the case goals, as the Mother continued to use drugs, failed to comply with all services, failed to submit to all drug screens, failed to participate in services, and failed to attend the TPR fact-finding hearing; … In support thereof, the Court specifically notes:

a.  The DCS filed a Show Cause against the Mother on December 17, 2016, alleging the Mother tested positive for methamphetamine and failed to submit to all random drug screens.  Exhibit l.

* * *

k.  The Mother filed and obtained an Order for Protection against [J.H.] in 79D03-1710-PO-000675 and then asked for the Order of Protection to be dismissed.  Exhibit 13.

* * *

4.  That Kathleen Carmosin, a therapist and LCSW with Wabash Valley, testified that the domestic violence between the Mother and [J.H.] and the Mother's drug use negatively impacted the children; that the Mother's visits were suspended in April 2018 due to the Mother's suicidal threats and her threats to service providers; that while the Mother made progress at times, such progress was not sustained and the Mother was unable to ensure the children's safety; and that the Parents had not shown consistency.  Ms. Carmosin did not recommend visits (with [Children] and Mother) until the Mother could maintain her own mental health and then work on family therapy to develop a healthy, trusting relationship.  Exhibit 21.

5. That Shannon Gilles, a case manager with PAKT, testified that she briefly worked with the Mother in 2018, but had no contact with her after she no-showed [for] an appointment on June 20, 2018.

\* \* \*

7. That Carol Mullen, a former FCM with the DCS, testified that the Mother completed some services but was not stable. …

8. That John Catron, a licensed mental health counselor and licensed substance abuse counselor with Bauer Family Resources, testified that he worked with the Mother; that she was not engaged; that she was not likely to overcome her addiction issues; and that she was removed from their program because of lack of attendance. The Mother successfully completed a program in January 2018 but was referred back to the program in May 2018 after she relapsed. His May 2018 progress report indicated that the Mother had "lost motivation for recovery." Exhibit 22.

9. That Jenny Cahoon, a home[-]based case manager with HGCF, testified that she worked with the Mother during the prior and current cases; that the Mother had sporadic participation; that the Mother made progress in 2017; that the Mother admitted to relapsing in 2018; that the Mother admitted to using a clean-out kit to help her pass drug screens; that the Mother stated she wanted to stay with [J.H.]; and the Mother stated she would do heroin until she died. Additionally, the Mother threatened the FCM and service providers. Exhibit 16.

\* \* \*

11. That Dorothy Rausch, CASA, testified that the Parents had not shown long-term stability or progress; that the children were bonded with the foster parents and were thriving in foster care; and that termination of parental rights was in the best interests of the children.

12. That Harold Daniels, a home-based case manager with HGCF, testified that … [J.H.] appeared at the Mother's house on January 18, 2018[, that he] believed the Mother and [J.H.] were together (in violation of an Order of Protection)[,] and [that] he heard them talking about the Mother failing a drug screen.

13. That Crystal Denison, a social worker with PAKT, testified that she worked with the Mother in 2018 but that her sessions were suspended because of attendance issues.

14. That Monica Lee, a visitation supervisor with Wabash Valley, testified that the Mother was engaged and doing well in late 2017; that the Mother admitted to relapsing; and that the Mother's visits were stopped because she was a safety risk to the children.

* * *

16. That the Mother testified that she last used drugs (heroin) in July 2018; that she had not recently visited with the children; and that she was not employed and had no income.

17. That Ashley Rayburn, the FCM with DCS, testified that [Children were] never returned to the Parents after [their] removal; that [A.J.] has been out of the home for 40 of the last 48 months between the two cases [and that [A.H.] has been in his current placement since January 2017 (Appealed Order at 31)]; that [Children have] been in [their] current placement since

January 2017; that the Mother did not attend all appointments; that the Mother did not pass all of her drug screens; that the Mother did well during a portion of 2017; that the Mother relapsed in 2018; … that the Parents cannot provide a safe and stable environment for [Children]; that she has no providers willing to work with the Parents and has exhausted all options; that it is in [Children's] best interests that parental rights be terminated; and that it is in [Children's] best interests that [they] be adopted.

18. That the Mother failed drug screens on various occasions, testing positive for methamphetamine on December 6, 2016; positive for morphine on March 28, 2018; positive for morphine on May 17, 2018; positive for methamphetamine, fentanyl, norfentanyl, and morphine on May 23, 2018; positive for methamphetamine on May 24, 2018; positive for morphine on May 29, 2018; positive for fentanyl, norfentanyl, and morphine on May 30, 2018; and positive for methamphetamine and methadone on June 15, 2018. Exhibits 26, 27.

19. That [Children] remain in foster care placement and [are] thriving in such placement.

20. That the DCS'[s] permanency plan is for [Children] to be adopted by the foster parents.

* * *

Conclusions of Law

3. That there is a reasonable probability that the conditions resulting in the removal of [Children] from the home will not be remedied. [Children were] removed from the home due to the Mother's situation and substance abuse issues. The Mother

failed to make consistent or continued progress; failed to remain drug-free; failed to fully participate in services; failed to attend all visitations with [Children]; and failed to appear at the termination of parental rights hearing.

* * *

CASA testified at the TPR hearing and recommended that the Parents' rights be terminated.

The FCM testified at the TPR hearing and recommended that the Parents' rights be terminated.

* * *

In summary, the record contains no evidence that the Parents participated in the CHINS case in a consistent and sustained way, made any lasting changes to his/her behavior, or prepared himself/herself to successfully parent [Children], satisfying I.C. § 31-35-2-4(b) (2) (B) (I).

4. That there is a reasonable probability that continuation of the parent-child relationship will pose a threat to the well-being of [Children]. …

5. That it is in [Children's] best interests that the parent-child relationship[s] be terminated. …

6. That there is a satisfactory permanency plan for [Children], i.e., adoption. …

Appealed Order at 6-17. Mother now appeals.

# Discussion and Decision

## Standard of Review

Mother maintains that the trial court's order terminating her parental rights was clearly erroneous. We begin our review of this issue by acknowledging that "[t]he traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *Bailey v. Tippecanoe Div. of Family & Children (In re M.B.)*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied*. However, a trial court must subordinate the interests of the parents to those of the child when evaluating the circumstances surrounding a termination. *Schultz v. Porter Cty. Off. of Family & Children (In re K.S.)*, 750 N.E.2d 832, 837 (Ind. Ct. App. 2001). Termination of a parent-child relationship is proper where a child's emotional and physical development is threatened. *Id.* Although the right to raise one's own child should not be terminated solely because there is a better home available for the child, parental rights may be terminated when a parent is unable or unwilling to meet his or her parental responsibilities. *Id.* at 836.

Before an involuntary termination of parental rights can occur in Indiana, DCS is required to allege and prove, among other things:

> (A) that one (1) of the following is true:

> * * *

(iii) The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B) that one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services.

* * *

(C) [and] that termination is in the best interests of the child . . . .

Ind. Code § 31-35-2-4(b)(2). DCS need establish only one of the requirements of subsection (b)(2)(B) before the trial court may terminate parental rights. *Id.* DCS's "burden of proof in termination of parental rights cases is one of 'clear and convincing evidence.'" *R.Y. v. Ind. Dep't of Child Servs. (In re G.Y.)*, 904 N.E.2d 1257, 1260-61 (Ind. 2009) (quoting I.C. § 31-37-14-2).

When reviewing a termination of parental rights, we will not reweigh the evidence or judge the credibility of the witnesses. *Peterson v. Marion Cty. Off. of Family & Children (In re D.D.)*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*. Instead, we consider only the evidence and reasonable inferences that are most favorable to the judgment. *Id.* Moreover, in deference to the trial court's unique position to assess the evidence, we will set aside the court's judgment terminating a parent-child relationship only if it is clearly erroneous. *Judy S. v. Noble Cty. Off. of Family & Children (In re L.S.)*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999). *trans. denied*.

Here, in terminating Mother's parental rights, the trial court entered specific findings of fact and conclusions thereon. When a trial court's judgment contains special findings and conclusions, we apply a two-tiered standard of review. *Bester v. Lake Cty. Off. of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). First, we determine whether the evidence supports the findings and, second, we determine whether the findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). If the evidence and inferences support the trial court's decision, we must affirm. *In re L.S.*, 717 N.E.2d at 208.

Mother does not challenge any of the trial court's relevant findings of fact. Rather, she contends that the trial court erred in its conclusions of law. As to the latter, she does not challenge the trial court's conclusions that she has failed to remedy the conditions that resulted in Children's removal and that there is a

reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of Children. Rather, she alleges only that the trial court erred in concluding that termination is in the best interests of Children.

## Best Interests

[10] In determining whether termination of parental rights is in the best interests of a child, the trial court is required to look at the totality of the evidence. *A.S. v. Ind. Dep't of Child Servs.* (*In re A.K.*), 924 N.E.2d 212, 224 (Ind. Ct. App. 2010). "A parent's historical inability to provide adequate housing, stability and supervision coupled with a current inability to provide the same will support a finding that termination of the parent-child relationship is in the child's best interests." *Castro v. State Off. of Family & Children*, 842 N.E.2d 367, 374 (Ind. Ct. App. 2006), *trans. denied*. "Additionally, a child's need for permanency is an important consideration in determining the best interests of a child, and the testimony of the service providers may support a finding that termination is in the child's best interests." *In re A.K.*, 924 N.E.2d at 224. Such evidence, in addition to evidence that the conditions resulting in removal will not be remedied, is sufficient to show by clear and convincing evidence that termination is in the child's best interests. *L.S. v. Ind. Dep't of Child Servs.* (*In re A.D.S.*), 987 N.E.2d 1150, 1158-59 (Ind. Ct. App. 2013), *trans. denied*.

[11] The trial court concluded that the conditions resulting in Children's removal will not be remedied, and Mother does not challenge that conclusion. In

addition, the evidence supports the following findings: Mother has a historic and current inability to maintain a consistent source of income, a safe home free from drug use, and adequate supervision; Mother historically and currently uses illegal substances; Mother failed to participate consistently in services ordered by the trial court; and both the FCM and the CASA recommended that Mother's parental rights be terminated. Those findings support the trial court's conclusion that termination is in Children's best interests. *See, e.g.*, *In re A.D.S.*, 987 N.E.2d at 1158-59. Mother's contentions to the contrary are simply requests that we reweigh the evidence, which we cannot do. *In re D.D.*, 804 N.E.2d at 265.

[12] Affirmed.

Riley, J., and Pyle, J., concur.